CLIFFORD FARTHING,
            Plaintiff,                  Case No. 07-CV-13225

vs.                                   DISTRICT JUDGE PAUL D. BORMAN

                                       MAGISTRATE JUDGE STEVEN D. PEPE

KENNETH RYAN, ET AL
                  Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner lawsuit under 42 U.S.C. § 1983 seeking monetary and equitable relief. At the time of the incidents which give rise to the present action, Plaintiff was incarcerated at the Robert Cotton Correctional Facility, Jackson, Michigan, part of the Michigan Department of Corrections ("MDOC"). Plaintiff alleges that Defendants Ryan and Gilbert failed to provide notary services for pleadings submitted to the Michigan Supreme Court. Plaintiff filed this suit on August 2, 2007, and Defendants were served via waiver on June 3, 2008. On July 1, 2008, the Defendants filed a motion for summary judgment under Fed. R. Civ. P. 56(b) based on failure to exhaust administrative remedies (Dkt. #16). All pre-trial matters were referred under 28 U.S.C. § 636(b) (Dkt. #17). For the reasons stated below, it is **RECOMMENDED** that the Defendants' motion be **GRANTED**.

## I.    BACKGROUND

The Plaintiff was convicted by guilty plea of second degree murder and felony firearm on June 16, 1986, in the Oscoda County Circuit Court (Dkt. #1, ¶ 13). Plaintiff was given a life sentence and, on June 16, 2004, he filed a motion for Relief from Judgment, seeking post conviction relief from his convictions and sentences (Dkt. #1, ¶¶ 14, 15). Plaintiff's appeal was

denied by the Oscoda County Circuit Court, and his application for leave to appeal was denied by the Michigan Court of Appeals (Dkt. #1,, ¶ ¶ 16, 17).  Plaintiff had 56 days to apply for leave to appeal in the Michigan Supreme Court, with a deadline for his application of February 1, 2006 (Dkt. #1, ¶ 18).

On January 23, 2006, Plaintiff alleges that he sought to have Defendant Gilbert provide notary services for pleadings to be submitted to the Michigan Supreme Court (Dkt. #1, ¶ 19).  At that time, Defendant Gilbert's notary public commission had expired.  According to Plaintiff, Defendant Gilbert told him he would ask Defendant Ryan to come to the housing unit to provide the requested notary services  (Dkt. #1, ¶ 21).  Defendant Ryan came to the office to provide the notary services on the afternoon of February 1, 2006, despite some earlier attempts by Plaintiff to contact him through other staff members (Dkt. #1, ¶ ¶ 22-49).  Because the mail room had already closed for the day, Plaintiff's application was postmarked on February 2, 2006 (Dkt. #1, ¶ ¶ 49, 54).  Plaintiff's Application for Leave to Appeal was rejected by the Michigan Supreme Court on February 3, 2006 as untimely filed. (Dkt. #1, ¶ 55).

As a result of this, Plaintiff filed a grievance (Dkt. #16, Ex. A, #JCF 06-03-0427-17i) on March 6, 2006 against Defendants Ryan and Gilbert for failing to provided timely notary services as was necessary for his court documents (Dkt. #1, ¶ 8(a)).   Plaintiff's Step I grievance was denied on March 28, 2006. (Dkt. #1, ¶ 9(a)).  Plaintiff appealed the denial of his grievance to Step II on April 5, 2006. (Dkt. #1, ¶ 9(b)).  Plaintiff claims that on May 16, 2006,  he appealed his grievance to the Director of the MDOC at Step III. (Dkt. #1, ¶ 9(d)).  Plaintiff also claims that he sent inquiry letters to the MDOC on June 26, 2006 and February 25, 2007, asking about the status of his grievance. (Dkt. #1, ¶ ¶ 9(e), 9(f)).  No record, however, exists of either the May

16, 2006, appeal of grievance to Step III or the June 26, 2006, inquiry letter (Dkt. #16, Ex B).

On March 16, 2007, MDOC Manager James Armstrong of the Grievances & Appeals Section wrote Plaintiff to tell him that his grievance would not be processed because Plaintiff had not completed the Step I and Step II process by submitting a response for both Steps prior to appealing to Step III (Dkt. #16, Ex C). On April 2, 2007, Manager Armstrong sent a second letter to Plaintiff stating that "[w]e do (sic) not received any grievances from you." (Dkt #16, Ex D). No record exists at the MDOC of Plaintiff ever initiating a Step III grievance from 2006 to the present time (Dkt. #16, Ex E).

## II.   ANALYSIS

### A.   The Legal Standards

Under the Prisoner Litigation Reform Act, a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 548 U.S. 81 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the

3

> prisoner's wish to bypass the administrative process; the prisoner could easily
> achieve this by violating other procedural rules until the prison administration has
> no alternative but to dismiss the grievance on procedural grounds. We are
> confident that the PLRA did not create such a toothless scheme.

*Id*. at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. PD Preamble. These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

A prisoner-plaintiff is no longer required to plead or demonstrate exhaustion of administrative remedies to satisfy the PLRA requirements of 42 USC §1997e(a). *Jones v. Bock, et al.*, 549 U.S. 199 (2007). Failure to exhaust is now an affirmative defense that must be raised by a defendant. *Jones* at 216. The Sixth Circuit has held that the "exhaustion requirement, while not jurisdictional, is mandatory and must be addressed in the first instance by the district court in all prisoner civil rights cases—before the merits of the case are addressed." *Clark v. Beebe*, No 98-1430, 1999 US App LEXIS 27411 at *3 (CA 6, October 21, 1999) (unpublished opinion) (See copy at Dkt. #16, Ex F). The Supreme Court has held that "[t]he exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Supreme Court has made clear that the purpose for the "exhaustion requirement is to reduce the quantity and improve the quality of prisoner lawsuits." *Id*. at 524. It achieves this

goal by "(1) allowing prison officials an opportunity to satisfy the inmate's complaint, thus potentially obviating the need for litigation; (2) filtering out some frivolous claims; and (3) creating an administrative record that facilitates review of cases that are ultimately brought to court. *Id*. at 525. Courts should "not adjudicate any such claim until after exhaustion unless the complaint satisfies §1997e(c)(2)." *Brown v. Tombs*, 139 F.3d 1102, 1104 (6th Cir. 1998).

MDOC Regulations set out a grievance process, "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones* at 923. The MDOC has specific administrative procedures that prisoners must follow to exhaust their administrative remedies. MDOC Policy Directive 03.02.130 lays out a three-step process that prisoners must complete before being considered to have exhausted their claims (Dkt. #16, Ex. B, MDOC PD 03.02.130 (Effective December 19, 2003)). There are specific rules in PD 03.02.130 (such as time frames and content policies) that prisoners must follow, or else they face having their grievances rejected.

### B. Factual Analysis

Plaintiff has not exhausted all of his administrative remedies. The data bank on MDOC's computer which records all grievances filed within the MDOC shows that Plaintiff has never filed a Step III grievance during his incarceration in a Michigan correctional facility from 2006 to present, on any issue. Plaintiff argues that he filed the Step III grievance on May 16, 2006 (Dkt. #1, ¶9(d)). He claims to have filed a letter on June 26, 2006, seeking a status update about his Step III grievance (Dkt. #1, ¶9(e)), to which he never received a response, in no small part because the MDOC claims it never received the letter. Eight months later, on February 25, 2007, Plaintiff sent a letter inquiring about the status (Dkt. #1, ¶9(d)) which was received and replied

to two weeks later (Dkt. #16, Ex. C).  The letter stated that the Plaintiff "must complete the Step One and the Step Two grievance process and submit a response for both Steps prior to appealing to Step Three."  *Id*.  A second letter from the MDOC on April 2, 2007, informed Plaintiff that the MDOC had not received any grievances from the Plaintiff (Dkt. #16, Ex. D).

It is Plaintiff position that the two letters from the MDOC signify the conclusion of his available administrative remedies against the Defendants.  The two letters, however, evidence the opposite conclusion, namely that Plaintiff had not filed the required paperwork for Step III appeal in compliance with the grievance process.  *Shepard v. Wilkinson*, 27 Fed.Appx. 526, 527 (6th Cir. 2001) ("[w]hile Shepard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims.") (unpublished opinion).

Nor can Plaintiff's February 25, 2007, letter to the Director of the MDOC inquiring into the status of his grievance satisfy the Step III requirement, because letters to prison officials are not part of the formal grievance process, and thus cannot satisfy the exhaustion requirement.  There is nothing in the record, other than Plaintiff's unsupported assertion, to indicate that the grievance process had been exhausted.  Therefore, it is recommended that Defendants' motion for summary judgment be **GRANTED**.

**III.**    **RECOMMENDATION**

For the reasons stated above, it is **RECOMMENDED** that Defendants' motion be **GRANTED**, and that the case against each of them be dismissed due to Plaintiff's failure to exhaust his administrative remedies.  The parties to this action may object to and seek review of this Report

and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pgs. in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pgs. in length unless by motion and order such pg. limit is extended by the Court. So Ordered

                                    s/Steven D. Pepe
                                    United States Magistrate Judge

Dated: November 4, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 4, 2008.

                                    s/V. Sims
                                    Case Manager